IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY OF THE FAMILY BAKER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-341-C-BN |
| | § | |
| CHILD SUPPORT DIVISION and | § | |
| DALLAS COUNTY TEXAS, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This civil rights action filed by a *pro se* plaintiff who paid the $400.00 statutory filing fee to initiate it has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge Sam R. Cummings. Defendant Dallas County moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. No. 15. Plaintiff Anthony of the Family Baker ("Baker") filed a response in opposition. *See* Dkt. Nos. 19 & 20. And Dallas County filed a reply brief. *See* Dk. No. 21. The undersigned enters these findings of fact, conclusions of law, and recommendation that, because Baker has failed to allege a plausible claim against either defendant he identifies, the Court should grant Dallas County's motion under Rule 12(b)(6) and dismiss this action without prejudice to Baker's filing, if possible, and within a reasonable period of time to be set by the Court, an amended complaint that overcomes the deficiencies identified.

## Applicable Background

Baker brings claims under 42 U.S.C. § 1983 against "42 U.S.C. § 654(3) Child Support Division" ("CSD") and Dallas County, Texas, alleging that these defendants violated his constitutional rights and deprived him of property. *See generally* Dkt. No. 3; *see, e.g.*, *id.* at 1 ("Property and income which Baker honestly acquires, he retains full control of, he did not use it to his neighbor's injury, he did not devote it to the CSD's or Dallas County's use, and he did not grant them the right to control that use so that whenever their needs require, they may take it upon payment of due compensation." (citation and emphases omitted)); *id.* at 9 (requesting as relief, that the Court "set right this undesirable and unfair situation, Baker's inherent and indefeasible rights privileges and immunities are restored, the current CSD IV-D Collections Case# DF16-14397 shall be terminated effective immediately, and he shall care for his seed in private, and no longer required to pay the CSD, and to be let alone from their intrusion into his private and professional life" and that he be given "a full refund of all monies collected, accompanied with the CSD's 66% federal profits therefrom, as well as penalties and interest"); *see also Cuvillier v. Taylor*, 503 F.3d 397, 402-07 (5th Cir. 2007) (finding that an individual may not enforce, under Section 1983, the various provisions of Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b – "We agree with the Sixth Circuit in *Clark[ v. Portage County, Ohio*, 281 F.3d 602 (6th Cir. 2002),] that 'the simple lack of effectiveness by a state in enforcing support obligations does not alone give rise to an individual right.' *Id.* at 605. Cuvillier may in some sense be a beneficiary of the Title IV-D provisions that she cites, but Congress

did not intend by those provisions to give her an individual right enforceable through a section 1983 suit. *Gonzaga University v. Doe*, 536 U.S. 273 (2002), instructs this result." (footnotes omitted)).

In sum, Baker seeks to use this civil rights action to change – or escape from – the child-support obligations imposed on him by a state court and to obtain damages based on those previously imposed obligations.

## Legal Standards

I. <u>Federal Rule of Civil Procedure 12(b)(1)</u>

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As such, the Court must dismiss a complaint for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court.

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). And where, like here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively "facial," and the Court need look only to the sufficiency of the allegations of the plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).

A "factual" attack on jurisdiction, however, is based on affidavits, testimony, and other evidentiary material. *See id.* Under such an attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523; *see also Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. May 1981) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." (quoting *Mortensen v. First. Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977))).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any

attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

II.    Federal Rule of Civil Procedure 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and

conclusions, and, while a court must accept all of the plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, the plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States Supreme Court "has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

That rationale has even more force in this case, as the Court "must construe the

pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

Although the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the

-7-

plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techs.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

## Analysis

### I.   Jurisdiction

"[T]he *Rooker-Feldman* doctrine is a narrow jurisdictional bar ...  designed to prevent lower federal courts from exercising jurisdiction over matters that are exclusively reserved for Supreme Court review under 28 U.S.C. § 1257." *Gross v. Dannatt*, ___ F. App'x ____, No. 18-10078, 2018 WL 4223518, at *1 (5th Cir. Sept. 5,

2018) (per curiam) (citing *Lance v. Dennis*, 546 U.S. 459, 464, 463 (2006) (per curiam); citation omitted).

Under this doctrine, a federal district court lacks jurisdiction to consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) ("under [*Rooker-Feldman*] a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights" (citing *D.C. Ct. App. v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923))); *see also Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) ("'Reduced to its essence, the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments' except when authorized by Congress." (quoting *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004))); *Brown v. Taylor*, 677 F. App'x 924, 927 (5th Cir. 2017) (per curiam) (summarizing the doctrine and its applicability to cases in which a plaintiff's claims "assert as a legal wrong" or "invite direct review and rejection of" a state court's decision).

"A plaintiff cannot 'circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief,' if these claims are 'inextricably intertwined with a state judgment.'" *Turner v. Cade*,

354 F. App'x 108, 111 (5th Cir. 2009) (per curiam) (quoting *United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994); citation and internal quotation marks omitted).

And the Fifth Circuit has "held 'that litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits'" and that, moreover, "[t]he only federal recourse for constitutional questions arising in state court proceedings is application for writ of certiorari to the United States Supreme Court." *Id.* (respectively quoting *Hale v. Harney*, 786 F.2d 688, 690-91 (5th Cir. 1986), and citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)).

As in *Turner*, Baker's claims implicating the support order appear to present an impermissible request that this federal district court sit in review of a state court judgment. *See, e.g.*, Dkt. No. 3 at 9 (requesting that "the current CSD IV-D Collections Case# DF16-14397 [ ] be terminated effective immediately"). His claims therefore appear to be "'inextricably intertwined' with the state court judgment so that this Court could not rule in [his] favor without overturning the state court." *Id.* (citing *Shepherd*, 23 F.3d at 924).

And courts in this circuit have "consistently applied the *Rooker-Feldman* doctrine as a bar to federal jurisdiction over matters related to the family disputes of divorce and child support." *Evans v. Williamson Cty. Gov't*, No. A-15-CV-436-SS, 2015 WL 4621449, at *4 (W.D. Tex. May 28, 2015) (collecting cases), *rec. accepted*, 2015 WL 4624708 (W.D. Tex. July 31, 2015); *see, e.g.*, *McCormick v. Dempster*, 82 F. App'x 871, 2003 WL 22922312, at *1 (5th Cir. Dec. 9, 2013) (per curiam) (affirming "dismissal for

lack of subject matter jurisdiction[, under *Rooker-Feldman*,] of [a *pro se* plaintiff's] 42 U.S.C. § 1983 action, in which she asserted that her due process rights were violated by a state court's entry of a child custody order and another state court's enforcement of that order"); *Glatzer v. Chase Manhattan Bank*, 108 F. App'x 204, 2004 WL 2091406, at *1 (5th Cir. Sept. 20, 2014) (per curiam) (affirming "the district court's application of the *Rooker-Feldman* doctrine" to a plaintiff's constitutional claims implicating a California custody and child support order because those claims were "inextricably intertwined with the state court order" (citations omitted)); *but cf. Gross*, 2018 WL 4223518, at *2 (noting that the related domestic relations exception to federal jurisdiction only applies where "claims for relief ... require the court to issue [ ] 'divorce, alimony, or child custody decrees'" and does not apply to, for example, "claims surrounding the breach of a prenuptial agreement" (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 701, 704 (1992))).

But the *Rooker-Feldman* doctrine does not apply if, at the time the federal suit is filed, the state proceeding implicated was ongoing, even if on appeal. *See, e.g.*, *Gross*, 2018 WL 4223518, at *1-*2 ("[T]his court has limited the application of *Rooker-Feldman* to those cases in which 'a party suffered an adverse final judgment rendered by a state's court of last resort.' *Ill. Cent. R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012). Many of our sister circuits have reached the same conclusion. *See Parker v. Lyons*, 757 F.3d 701, 705-06 (7th Cir. 2014) (observing that '[s]ince [*Exxon Mobil*], all federal circuits that have addressed the issue have concluded that *Rooker-Feldman* does not apply if, as here, a state-court appeal is pending when the federal suit is filed'

and citing precedent from the First, Eighth, Ninth, Tenth, and Eleventh Circuits). At the time Gross filed his complaint, his state petition for review was still pending before the Texas Supreme Court. Accordingly, *Rooker-Feldman* did not deprive the district court of jurisdiction." (footnotes omitted)).

Here, Dallas County does not address the status of the state proceeding (DF16-143970) implicated by Baker's federal claims, so the Court has no basis to know whether an adverse final judgment by a Texas court of last resort has been entered.

Lacking this knowledge, the Court cannot say that *Rooker-Feldman* deprives it of jurisdiction. And the motion to dismiss based on Rule 12(b)(1) should be denied.

II.    42 U.S.C. § 654(3) Child Support Division ( or CSD)

Baker identifies this defendant as a "single and separate unit, umbrella agency in the Executive Branch, under 31 U.S.C. § 6305 contractual partnership with the Federal OCSE, and employer agency 45 CFR § 302.34 IV-D contractors within Dallas County to sell IV-D services as condition of receiving federal profits." Dkt. No. 2 at 3.

Despite his characterization, in Texas, the Office of Attorney General ("OAG"), "is the designated IV-D agency ... and has the power to enforce child support orders and collect and distribute support payments" – a power that "derives from federal legislation[,] Title IV, Part D of the Social Security Act[, which] requires each state to designate an agency to enforce child support orders." *Office of Attorney Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 862 (Tex. 2013) (citing, respectively, TEX. FAM. CODE §§ 231.001, .101(a)(5)-(6); 42 U.S.C. §§ 651-669b). And it is clear that OAG's child support division is merely a department within that agency. *See Office of Attorney Gen. v.*

*Weatherspoon*, 435 S.W.3d 844, 849 (Tex. App. – Dallas 2014) ("It is also undisputed ... that the Child Support Division is part of the OAG."), *rev'd on other grounds*, 472 S.W.3d 280 (Tex. 2015).

A plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. And, because Baker has not shown that CSD is a jural entity, his claims against it should be dismissed.

Further, to the extent that Baker attempts to state a claim against the OAG itself, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.' Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015) (respectively quoting *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014), and citing *Quern v. Jordan*, 440 U.S. 332, 340 (1979)); *see also Soniat v. Tex. Real Estate Comm'n*, 721 F. App'x 398, 398 (5th Cir. 2018) (per curiam) ("Congress has not clearly abrogated state agencies' sovereign immunity from suits brought under 42 U.S.C. § 1983." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989))).

And, because Baker is seeking "retrospective money damages," the exception under *Ex Parte Young*, 209 U.S. 123 (1908), does not supply federal jurisdiction over any claim against the Texas Attorney General. *NiGen Biotech*, 804 F.3d at 394 ("A claim for money damages 'seek[s] to impose a liability which must be paid from public funds in the state treasury.' As the AG correctly points out, the Eleventh Amendment bars federal court jurisdiction over such claims." (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))).

III.    Dallas County

"A municipality" – like Dallas County – "may be held liable under § 1983 'when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury.'" *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); citation omitted).

To assert liability under *Monell*, Baker must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *see also id.* ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" (quoting *Piotrowski*, 237 F.3d at 578)).

And, because Baker fails to allege that his rights were violated under an official policy of Dallas County, he has not alleged a plausible claim against that municipality.

-14-

## Recommendation

The Court should grant Dallas County's motion to dismiss based solely on Rule 12(b)(6) [Dkt. No. 15] and dismiss this action without prejudice to Plaintiff Anthony of the Family Baker's filing, if possible, and within a reasonable period of time to be set by the Court, an amended complaint that overcomes the deficiencies identified.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 18, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE